UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Huntington National Bank, | Case No. 22-cv-1847 (WMW/ECW) |
| Plaintiff, | |
| | **ORDER** |
| v. | |
| McFarlin LLP and Timothy G. McFarlin, | |
| Defendants. | |

---

Before the Court is Plaintiff Huntington National Bank's motion for default judgment. (Dkt. 12.) For the reasons addressed below, the Court grants the motion.

## BACKGROUND

Plaintiff Huntington National Bank (Huntington), a national banking association headquartered in Ohio, alleges that it entered into an Installment Payment Agreement (Agreement) with Defendant McFarlin LLP for a financed amount of $199,561.57. (Dkt. 1 at 3.) The parties entered into the Agreement to facilitate McFarlin LLP's purchase of certain software and equipment. Under the Agreement, McFarlin LLP was required to make 60 monthly payments of $3,918.63 to Huntington. (Dkt. 1 at 2.) The Agreement also entitled Huntington to obtain fees, costs and expenses associated with Huntington exercising its rights and remedies under the Agreement. The Agreement was secured by a continuing guaranty (Guaranty) from Defendant Timothy G. McFarlin. The Guaranty provided an absolute guaranty of full payment of all obligations that McFarlin LLP owed under the Agreement and obligated McFarlin to pay all costs, fees and expenses that the

Creditor incurred in connection with enforcing the Guaranty along with McFarlin LLP's other obligations. (Dkt. 1 at 6.)

On June 9, 2022, McFarlin LLP failed to make its payment, and on June 24, 2022, Huntington notified McFarlin LLP and McFarlin that it was in default under the Agreement. Huntington commenced this action on July 21, 2022, alleging breach of contract.[1] Huntington served McFarlin on July 21, 2022, and served McFarlin LLP on August 5, 2022. The Clerk of Court entered default as to McFarlin and McFarlin LLP on September 30, 2022. Neither McFarlin LLP nor McFarlin has appeared in this case. Huntington now moves for default judgment.

## ANALYSIS

To obtain a default judgment, a party must follow a two-step process. First, the party seeking a default judgment must obtain an entry of default from the Clerk of Court. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Here, on Huntington's application, the Clerk of Court entered default as to McFarlin and McFarlin LLP on September 30, 2022. The entry of default is supported by the record, which reflects that McFarlin and McFarlin

---

[1]  The complaint also alleges unjust enrichment and promissory or equitable estoppel. In doing so, the complaint asserts Huntington's rights to claim and obtain collateral and priority liens. But at the default-judgment hearing, however, Huntington advised that it would not object to the Court entering judgment only on Huntington's breach-of-contract claims and dismissing the remaining claims.

LLP were properly served with the complaint and summons and failed to answer or otherwise respond to the complaint.

Second, after default is entered, the party seeking affirmative relief "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Upon default, the factual allegations in the complaint are deemed admitted except those relating to the amount of damages. Fed. R. Civ. P. 8(b)(6); *accord Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). However, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray*, 595 F.3d at 871 (internal quotation marks omitted); *accord Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010). The Court now evaluates the factual basis for each claim Huntington advances in its complaint.

## I.   Breach of Contract by McFarlin LLP (Count I)

Huntington alleges breach of contract by McFarlin LLP. Under Minnesota law, "[t]he elements of a breach of contract claim are (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014).

Huntington alleges that McFarlin LLP entered into the Agreement with Huntington on July 8, 2021, in which Huntington lent McFarlin LLP $199,561.57. According to Huntington, failing to make a required monthly payment is an occurrence that entitles Huntington to exercise all of its remedies under the contract, including accelerating the

entire indebtedness. (Dkt. 1 at 8.) Huntington alleges that it provided Defendants notice of the default on June 24, 2022. In Huntington's June 2022 notice, Huntington also notified Defendants that it planned to exercise its right to accelerate the payments—that is, "to declare immediately due and payable the sum of all amounts currently due under the [Agreement], plus all unpaid Payments for the remaining term of the [Agreement]." (Dkt. 1 at 4; Dkt. 1-1 at 21-22.) Huntington alleges that, as of July 15, 2022, McFarlin LLP owed Huntington $181,394.69.

Accepting these facts as true, Huntington has alleged sufficient facts to support a breach-of-contract claim against McFarlin LLP. For this reason, Huntington has established that the unchallenged facts constitute a legitimate claim for breach of contract as to McFarlin LLP.

## II.     Breach of Contract by McFarlin (Count II)

Huntington also alleges breach of contract by McFarlin. Huntington alleges that the Agreement is secured in part by a Guaranty from McFarlin in favor of Huntington. (Dkt. 1 at 6.) Huntington contends that under the Guaranty, McFarlin "unconditionally and absolutely guaranteed the full and prompt payment of all obligations of [McFarlin LLP] including, without limitation, amounts due under the [Agreement]." (Dkt. 1 at 6.) And the Guaranty provides that McFarlin is liable for all costs and expenses incurred by the Creditor in connection with enforcing the Guaranty and McFarlin LLP's obligations. (Dkt. 1 at 6.) McFarlin LLP breached the Agreement, Huntington alleges, by failing to make the required monthly payments due. (Dkt. 1 at 7.) Huntington provided Defendants

notice of the default on June 24, 2022. (Dkt. 1 at 7.) In the June 2022 notice, Huntington also notified Defendants that it planned to exercise its right to accelerate the payments—that is, "to declare immediately due and payable the sum of all amounts currently due under the [Agreement], plus all unpaid Payments for the remaining term of the [Agreement]." (Dkt. 1 at 7; Dkt. 1-1 at 21-22.) Huntington alleges that, as of July 15, 2022, McFarlin LLP owed Huntington $181,394.69. McFarlin has failed and refused to pay the amounts owed under the Agreement, thereby breaching the Guaranty, Huntington alleges. (Dkt. 1 at 10.)

Accepting these facts as true, Huntington has alleged sufficient facts to support a breach-of-contract claim against McFarlin. Huntington has established that the unchallenged facts constitute a legitimate claim for breach of contract as to McFarlin.

### III.   Damages

Huntington asks the Court to award damages in its favor. A district court must ascertain the amount of damages before entering a default judgment. *See Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000) ("[A] default judgment cannot be entered until the amount of damages has been ascertained." (internal quotation marks omitted)). A party seeking a default judgment must prove its damages to a reasonable degree of certainty. *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001). A district court may determine damages by computing from the facts of record the amount that the plaintiff is lawfully entitled to recover and enter judgment accordingly. *Pope v. United States*, 323 U.S. 1, 12 (1944).

5

Huntington seeks actual damages in the amount of $186,890.73. (Dkt. 14 at 4.) Huntington first contends that Defendants owe $27,430.41 in damages for past-due payments, representing seven installment payments of $3,918.63 each. (Dkt. 14 at 4.) This amount is supported by the Agreement, which identifies the monthly payment amount as $3,918.63. The amount Huntington seeks in damages for past due payments represents the seven monthly payments that McFarlin LLP failed to make between June 2022 and December 2022. Huntington has proved to a reasonable degree of certainty its entitlement to $27,430.41 in past-due monthly payments.

Huntington also maintains that it is entitled to the present value of 43 future or accelerated monthly installments at an interest rate of 6.65 percent, totaling $149,627.77. (Dkt. 14 at 4.) Huntington provides the Court a chart calculating the present value of the remaining 43 owed installments, which confirms that $149,627.77 is due. (Dkt. 15-1 at 47–48.) Huntington, therefore, has proved to a reasonable degree of certainty its entitlement to the present value of 43 future or accelerated monthly payments at an implicit interest rate of 6.65 percent, totaling $149,627.77.

The Agreement provides for a 5 percent penalty on all monthly payments in the event of default if default occurred in the first 12 months of the payment schedule. Huntington contends that the 5 percent penalty on the present value of all monthly installment payments was $7,481.39, as of the date of Huntington's motion. (Dkt. 14 at 4.) The present value of the future monthly installments is $149,627.77. As five percent

6

of $149,627.77 is $7,481.39, Huntington has proved to a reasonable degree of certainty its entitlement to a penalty totaling $7,481.39.

Huntington also seeks $2,351.16 in damages for late fees. Under the Agreement, if an amount payable under the Agreement is not paid within 10 days of its due date, Huntington "may impose a late fee of up to 10% of the amount of the past due payment." Huntington seeks an award of $2,351.16 in late fees.[2] The total amount of late fees is calculated by taking 10 percent of a regular monthly payment of $3,918.63, multiplied by seven late payments. Ten percent of a regular monthly payment equals $391.86—multiplied by seven late payments equals $2,743.04. Despite the miscalculation, Huntington has proved to a reasonable degree of certainty its entitlement to a penalty totaling $2,743.04.

In total, the Court finds that Huntington has established to a reasonable degree of certainty its entitlement to $187,282.61 in damages.

**IV.     Attorneys' Fees**

Huntington seeks attorneys' fees and costs in the amount of $7,279.95. Minnesota law recognizes the freedom of contracting parties to bargain for the remedy of attorneys' fees. *See State Bank of Cokato v. Ziehwein*, 510 N.W.2d 268, 270 (Minn. Ct. App. 1994).

---

[2] The motion indicates that there are seven missed monthly payments, although the declaration filed in support of the motion states that there are six missed monthly payments at issue. (Dkt. 15 at 3.)

Minnesota courts enforce contractual obligations to pay attorneys' fees if the amount of fees allowed under the contract is reasonable. *Id.*

Because the sworn declarations, invoices and billing records that Huntington provides substantiate Huntington's claimed attorneys' fees and costs, the Court awards Huntington attorneys' fees and costs in the amount of $7,279.95.

V.     **Post-Judgment Interest**

Huntington requests post-judgment interest. A prevailing party has a right to post-judgment interest under 28 U.S.C. § 1961. Post-judgment interest begins to accrue on the day judgment is entered and accrues on a plaintiff's total award, including costs and attorneys' fees, until the judgment is satisfied. *Jenkins by Agyei v. Missouri*, 931 F.2d 1273, 1275 (8th Cir. 1991) ("The phrase 'any money judgment' in section 1961(a) is construed as including a judgment awarding attorneys' fees."); *see, e.g.*, *Minn. Voters All. v. City of Saint Paul*, No. 19-cv-0358 (WMW/HB), 2021 WL 1100901, at *7 (D. Minn. Mar. 23, 2021). Under Section 1961(a), post-judgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961(a). The Court, therefore, awards post-judgment interest at the rate set by 28 U.S.C. § 1961(a).

VI.    **Conclusion**

For the reasons stated above, Huntington's motion for default judgment is granted. Huntington has proved to a reasonable degree of certainty that it is entitled to $27,430.41, which is the past-due monthly payments; $149,627.77, which is the present value of the 43 remaining future or accelerated monthly payments at a 6.65 percent interest rate; $7,481.39, which is the 5 percent penalty fee on the 43 remaining future or accelerated monthly payments in the event of a default; and $2,743.04, which is the 10 percent penalty on the seven late payments. Huntington is also awarded $7,279.95 in attorneys' fees and

costs. The Court also awards Huntington post-judgment interest at the rate set by section 1961(a). In total, Defendants shall pay $194,562.56, plus post-judgment interest as calculated pursuant to 28 U.S.C. § 1961(a).

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff Huntington National Bank's motion for default judgment, (Dkt. 12), is **GRANTED** as to Counts I and II.

2. Counts III, IV, V, and VI of Plaintiff Huntington National Bank's complaint, (Dkt. 1), are **DISMISSED WITHOUT PREJUDICE**.

3. The Clerk of Court shall enter judgment in the amount of $194,562.56, plus post-judgment interest as calculated pursuant to 28 U.S.C. § 1961(a) against Defendants McFarlin LLP and Timothy G. McFarlin and in favor of Plaintiff Huntington National Bank.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 31, 2023                         s/Wilhelmina M. Wright
                                              Wilhelmina M. Wright
                                              United States District Judge